FILED

2018 MAR 12  PM 3: 48

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

MICROSOFT CORPORATION, a
Washington corporation,

                Plaintiff,

      v.

DOCTOR-PANASONIC, LLC, a Florida
limited liability company, GENERA PIERRE,
an individual, and MIKERLANGE PIERRE,
an individual,

                Defendants.

No. 6:18-CV-375-ORL-22 GJK

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**I.     INTRODUCTION**

1.     Doctor-Panasonic, LLC ("Doctor-Panasonic") and its owners and operators, Genera Pierre ("G. Pierre") and Mikerlange Pierre ("M. Pierre") (collectively, "Defendants") distribute computer systems installed with infringing and unlicensed Microsoft software. Defendants also unlawfully use Microsoft's trademarks to falsely advertise themselves as being affiliated with Microsoft in order to convince consumers that they are offering authentic, licensed software, when they are not. Beginning in at least 2015, Defendants activated over a thousand copies of unlicensed Microsoft software on computer systems which they then distributed to consumers. Defendants' conduct is ongoing and continues to harm Microsoft and its customers. Microsoft brings this action to stop Defendants from installing and selling unlicensed and pirated Microsoft software.

**II.     PARTIES**

2.     Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft develops, markets, distributes, and licenses

computer software, among other products and services.

3.     Doctor-Panasonic is a Florida limited liability company based in Orlando, Florida. Public documents show that G. Pierre is the entity's manager and M. Pierre is a member of the entity. The registered agent of Doctor-Panasonic is Paul Germain, who is connected to G. Pierre through at least one other entity, Edourad Direct Finans, LLC. Doctor-Panasonic sells computer systems through its own online website, doctor-panasonic.myshopify.com, and at least two other e-commerce platforms. Despite advertising that the computers it sells contain genuine, licensed Microsoft software, Doctor-Panasonic actually sells pirated software.

4.     G. Pierre is an individual who resides in Orlando, Florida who, along with M. Pierre, owns and operates Doctor-Panasonic. G. Pierre personally directs the sale of computer systems loaded with unlicensed Microsoft software, and derives profits from this unlawful activity at the expense of Microsoft and its customers. As a result, G. Pierre is personally liable to Microsoft for the damages alleged in this Complaint. Alternatively, G. Pierre has the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct. As such, G. Pierre is subject to personal liability for the wrongful conduct under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

5.     M. Pierre is an individual who resides in Orlando, Florida who, along with G. Pierre, owns and operates Doctor-Panasonic. M. Pierre personally directs the sale of computer systems loaded with unlicensed Microsoft software, and derives profits from this unlawful activity at the expense of Microsoft and its customers. As a result, M. Pierre is personally liable to Microsoft for the damages alleged in this Complaint. Alternatively, M. Pierre has the right and ability to supervise, direct, and control the

2

wrongful conduct alleged in this Complaint, and derives a direct financial benefit from that wrongful conduct. As such, M. Pierre is subject to personal liability for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and/or contributory infringement.

### III.    JURISDICTION & VENUE

6.    The Court has subject matter jurisdiction over Microsoft's claims pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331, 1338(a).

7.    The Court has personal jurisdiction over Defendants because each resides in the State, conducts business in the State and a substantial part of Defendants' actions giving rise to this suit occurred in the State.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(b)(1) because defendants reside in the District, and 28 U.S.C. § 1391(b)(2) and a substantial part of the events giving rise to this suit occurred in the District.

9.    Pursuant to Local Rule 1.02, assignment to the Orlando Division is appropriate because Defendants reside in Orange County, and substantial part of the events giving rise to this suit occurred in that county.

### IV.    FACTS

**A.    The Global Problem of Software Piracy**

10.    Software developers lose billions of dollars in annual revenue from software piracy, namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components. Approximately 39% of all software used worldwide is not properly licensed.[1] The commercial value of this unlicensed software is $52.2 billion, which results in direct

---

[1] *See* BSA | The Software Alliance, *Seizing Opportunity through License Compliance: BSA Global Software Survey*, May 2016, at http://globalstudy.bsa.org/2016/downloads/studies/BSA_GSS_US.pdf.

losses by the companies that develop these programs. But software developers, like Microsoft, are not the only victims of software piracy. Consumers are also victims because they face the likely threat that the software will stop working (i.e., will be deactivated) at some point in time. Consumers may also not receive the proper support and updates to the software.

11.     A 2015 study conducted by the International Data Corporation (IDC), revealed a strong statistical correlation between the use of unlicensed software and cybersecurity threats. As such, customers who are deceived by distributors of pirated software not only fail to receive genuine versions of the software (i.e., what they paid for), but may unwittingly expose themselves to security risks that would not be present had they received fully licensed software. *See* Federal Bureau of Investigation, *Consumer Alert: Pirated Software May Contain Malware*, Aug. 1, 2013, at https://www.fbi.gov/news/stories/pirated-software-may-contain-malware1 (noting the relatively greater risk that pirated software is infected with malicious software, or "malware," which can be used to record keystrokes and thus capture sensitive information such as user names, passwords, and Social Security numbers).

12.     Legitimate businesses selling genuine software are also harmed. The distribution of pirated software is fueled by discounted prices. These low prices induce customers to purchase from websites and companies like those run by Defendants rather than legitimate sellers.

**B.     Microsoft's Intellectual Property**

13.     Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs.

14.     Microsoft licenses its software, and does not sell the software itself. In other words, no title to Microsoft software passes to a user when he or she purchases a

license for a Microsoft software program.

15.     Microsoft develops, advertises, markets, distributes, and licenses the following software programs, among others:

a)     **Windows 7:** Microsoft has developed, advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 7 ("Windows 7"). Windows 7 is available in a number of different versions including Windows 7 Ultimate, Windows 7 Professional, Windows 7 Home Premium, and Windows 7 Enterprise. Microsoft holds a valid copyright in Windows 7 Ultimate, the most expansive version of Windows 7. As a result, Microsoft's copyright in Windows 7 Ultimate encompasses all other versions of Windows 7. Microsoft's copyright in Windows 7 Ultimate was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Windows 7 Ultimate, bearing the number TX 7-009-361, is attached as Exhibit 1.

b)     **Windows 8.1:** Microsoft has developed, advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 8.1 ("Windows 8.1"). Windows 8.1 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Windows 8.1 include Windows 8.1, Windows 8.1 Professional, and Windows 8.1 Enterprise. Microsoft holds a valid copyright in Windows 8.1 Professional, the most expansive version of Windows 8.1. As a result, Microsoft's copyright in Windows 8.1 Professional encompasses all other versions of Windows 8.1. Microsoft's copyright in Windows 8.1 Professional was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Windows 8.1 Professional, bearing the number TX 7-740-672, is attached as Exhibit 2.

c)     **Windows 10:** Microsoft has developed, advertises, markets,

distributes, and licenses a computer operating system called Microsoft Windows 10 ("Windows 10"). Windows 10 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Windows 10 include Windows 10 and Windows 10 Professional. Microsoft holds a valid copyright in Windows 10 Professional, the most expansive version of Windows 10. As a result, Microsoft's copyright in Windows 10 Professional encompasses all other versions of Windows 10. Microsoft's copyright in Windows 10 Professional was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Microsoft Windows 10 Professional, bearing the number TX 8-058-526, is attached as Exhibit 3.

        d)      **Office 2010:** Microsoft has developed, advertises, markets, distributes, and licenses a suite of productivity software for business, home, and educational use called Microsoft Office 2010 ("Office 2010"). Office 2010 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Office 2010 include Office 2010 Professional, Office 2010 Professional Plus, Office 2010 Home and Business, and Office 2010 Home and Student. Microsoft holds a valid copyright in Office 2010 Professional Plus, the most expansive version of Office 2010. As a result, Microsoft's copyright in Office 2010 Professional Plus encompasses all other versions of Office 2010. Microsoft's copyright in Office 2010 Professional Plus was duly and properly registered with the United States Copyright Office. A true and correct copy of the Registration Certificate for Office 2010 Professional Plus, bearing the number TX 7-151-840, is attached as Exhibit 4.

        16.      Microsoft has developed advertises, markets, distributes, and licenses the above software and related components using various trademarks and service marks, and uses these marks to distinguish Microsoft's software and related components from the

software or products of others in the same field or related fields.  Relevant to this case, Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including without limitation:

   a) "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236, for computer programs and computer programming services;

   b) "MICROSOFT (STYLIZED) AND DESIGN, Trademark and Service Mark Registration No. 4,552,363, for computer programs and manuals;

   c) "MICROSOFT DESIGN (COLOR)," Trademark and Service Mark Registration No. 4,560,827, for computer programs and manuals;

   d) "WINDOWS," Trademark Registration No. 1,872,264 for computer programs and manuals sold as a unit;

   e) "FLAG DESIGN TWO (B/W)," Trademark Registration No. 2,738,877, for computer software;

   f) "FLAG DESIGN TWO (COLOR)," Trademark Registration No. 2,744,843, for computer software;

   g) "FLAG DESIGN 2012," Trademark Registration No.4,400,958, for computer software;

   h) "FLAG DESIGN," Trademark Registration No. 3,361,017, for computer software;

   i) "WINDOWS 8 PACKAGING," Trademark Registration No. 4,476,005, for computer operating system software;

   j) "WINDOWS STORE TILE," Trademark Registration No. 4,552,497, for operating system software;

   k) "VIDEO TILE," Trademark Registration No. 4,412,218, for

7

computer software for downloading and viewing video content;

l)   "SPORTS TILE," Trademark Registration No. 4,426,632, for computer software for viewing information and content about sports;

m)   "MAPS TILE," Trademark Registration No. 4,415,985, for computer software for mapping and directions;

n)   "GAMES TILE," Trademark Registration No. 4,444,995, for computer software enabling access to online games;

o)   "CHARM BAR," Trademark Registration No. 4,489,348, for computer software operating system;

p)   "CAMERA TILE," Trademark Registration No. 4,415,986, for computer software for accessing and managing camera functions;

q)   "MUSIC TILE," Trademark Registration No. 4,426,630, for computer software for downloading and listening to music and other audio content;

r)   "MESSAGING TILE," Trademark Registration No. 4,426,631, for computer software for text and multimedia messaging;

s)   "MICROSOFT OFFICE," Trademark Registration No. 3,625,391, for computer productivity software;

t)   "OFFICE 2010 DESIGN," Trademark Registration No. 4,029,299, for computer productivity software;

u)   "ACCESS," Trademark Registration No. 3,238,869, for computer database management software;

v)   "ACCESS LAUNCH ICON (2010)," Trademark Registration No. 3,905,556, for computer database management software;

w)   "EXCEL," Trademark Registration No. 2,942,050, for computer spreadsheet software;

8

x)      "EXCEL LAUNCH ICON 2010," Trademark Registration No. 3,905,558 for computer spreadsheet software;

y)      "OUTLOOK," Trademark Registration No. 2,188,125, for computer programs for providing enhanced electronic mail and scheduling capabilities;

z)      "OUTLOOK LAUNCH ICON 2010," Trademark Registration No. 3,905,560, for computer programs for providing enhanced electronic mail and scheduling capabilities;

aa)     "PUBLISHER LAUNCH ICON," Trademark Registration No. 3,909,142 for desktop publishing software;

bb)     "ONENOTE," Trademark Registration No. 2,844,710, for computer software for use in note taking;

cc)     "ONENOTE LAUNCH ICON 2010," Trademark Registration No 3,905,559 for computer software for use in note taking;

dd)     "POWERPOINT," Trademark Registration No. 1,475,795, for computer software programs for creating presentations, graphics and videos;

ee)     "POWERPOINT LAUNCH ICON 2010," Trademark Registration No. 3,905,561, for computer software programs for creating presentations, graphics and videos; and

ff)     "WORD LAUNCH ICON 2010," Trademark Registration No. 3,909,143, for word processing software.

True and correct copies of the Trademark Registrations for (a) through (gg) above are attached as Exhibits 5 through 36, respectively.

### C.      Microsoft's Distribution Channels for Software

17.     Microsoft distributes its software through a number of distribution channels, including the Original Equipment Manufacturer (OEM), volume and academic

licensing, subscriptions, and refurbisher channels.

18.     The Original Equipment Manufacturer ("OEM") distribution channel is one through which Microsoft software is distributed to computer and device manufacturers called OEMs. OEMs customarily pre-install software on the devices they build including, most commonly, a Microsoft Windows operating system.

19.     The OEM distribution channel involves sub-channels that supply Microsoft software to different categories of OEMs. Two of these sub-channels are the Commercial OEM channel and the Direct OEM channel.

20.     Through the Commercial OEM ("COEM") channel, Microsoft authorized distributors supply what is called "system builder" software to small and medium-sized OEMs for pre-installation on devices. This software is required to be individually activated on each device.

21.     Through the Direct OEM ("DOEM") channel, Microsoft directly provides software to large computer manufacturers, such as Dell and Lenovo, for pre-installation on devices. The DOEMs acquire some components associated with the Microsoft software from Microsoft Authorized Replicators ("ARs").

22.     In addition to the OEM channel, Microsoft offers a number of programs through which it provides software to qualified members including the Microsoft Registered Refurbisher Program ("RRP") and the Microsoft Authorized Refurbisher ("MAR") program.

23.     The Microsoft Refurbisher programs allow members to offer their customers additional value by preinstalling genuine Microsoft software on refurbished computers. Members of the Microsoft refurbisher programs are required to affix a Program Certificate of Authenticity ("COA") on each refurbished system. Program COA labels may not be sold separately from refurbished systems.

24.     The RRP is for small and medium sized refurbishers that supply refurbished computer systems to consumers and businesses through commercial licenses and to educational institutions, non-profit charitable organizations or government programs through citizenship licenses. RRP members must sign a RRP Agreement, and a Logo License Agreement if they wish to display associated Microsoft logos.

25.     The MAR program is for large refurbishers who meet a minimum average threshold of refurbished PCs shipped per month. Refurbishers in the program professionally refurbish desktop and laptop computers and servers with genuine Microsoft software. MAR members must sign a MAR Program License Agreement, and a Logo License Agreement if they wish to display associated Microsoft logos.

### D.     Product Activation

26.     Like many software developers, Microsoft has implemented a wide-range of initiatives to protect its customers and combat theft and infringement of its intellectual property. One important Microsoft's anti-piracy technology is product activation which involves the activation of software through product activation keys.

27.     A Microsoft product activation key is a 25-character alphanumeric string generated by Microsoft and provided to customers and OEMs. When customers and OEMs install certain Microsoft software on a device, they are required to enter a product activation key. As part of the activation process, customers and, in some cases, OEMs voluntarily contact Microsoft's activation servers over the Internet and transmit their product keys and other technical information about the device to the activation servers.

28.     The activation process is analogous to the activation of credit cards or mobile phones with a code provided by the financial institution or the mobile carrier. Because Microsoft's copyrighted software is capable of being installed on an unlimited number of computers, Microsoft relies on the product activation process to detect piracy

and protect consumers from the risks of non-genuine software.

29.     Product keys are not a software license, nor do they constitute authorization from Microsoft to access or use software without the appropriate license. Product activation is merely technology used by Microsoft to protect its intellectual property from piracy and other forms of abuse.

30.     One prevalent form of software piracy is the unauthorized and unlawful use of decoupled Microsoft product activation keys that were stolen or acquired by fraud. The global black market for these stolen or fraudulently acquired decoupled product activation keys generates millions of dollars of illicit revenues for distributors.  In contrast, Microsoft does not sell product activation keys without an accompanying software license.  Microsoft does not authorize the sale or distribution of decoupled product activation keys separately from the software they were originally intended and authorized to activate.

31.     Another prominent form of software piracy is known as "hard-disk loading," which is the unauthorized commercial copying and installation of infringing software on computer systems which are then sold in competition with, and frequently for lower prices than, devices pre-installed with legally licensed copies of software.

**E.      Microsoft's Use of Cyberforensics to Combat Piracy**

32.     In order to combat the theft of its software, Microsoft relies on state-of-the-art technology to detect software piracy called "cyberforensics."

33.     Through cyberforensics, Microsoft analyzes activation data voluntarily provided by users when they activate Microsoft software, including the IP address from which a given product is activated.  An IP address is a numerical identifier used to uniquely identify an internet-capable device when the device is connected to the Internet. An IP address is ordinarily assigned to an internet user (whether an individual or an

entity) by the user's Internet Service Provider ("ISP").

34.    Cyberforensics allow Microsoft to analyze billions of activations of Microsoft software and identify activation patterns and characteristics consistent with software piracy.

### F.    Defendants' Infringing Conduct

35.    Defendants operate the website "doctor-panasonic.myshopify.com" through which they offer for sale computers purportedly containing genuine Microsoft software.

36.    Defendants operate the eBay seller account "saintamise2010" and the store DOCTORPANASONIC, through which they offer for sale computers purportedly containing genuine Microsoft software.

37.    Defendants operate the Amazon.com seller account "DOCTOR-PANASONIC" through which they offer for sale computers purportedly containing genuine Microsoft software.

38.    Through cyberforensics, Microsoft has identified thousands of activations, and attempted activations, of Microsoft Office 2010, Windows 10, Windows 8.1 and Windows 7 from IP addresses 73.21.204.220 and 73.21.165.49, beginning in at least 2015. The foregoing IP addresses were assigned to G. Pierre during the relevant time period and on information and belief, Defendants were and are responsible for the software activations and attempted activations.

39.    Over a thousand of the software activations and attempted activations were conducted with product keys that were (a) used more times than is authorized by the applicable software license and/or (b) were intended only to activate software outside of the United States.

40.    Each of these activations and attempted activations constitutes the

unauthorized copying of Microsoft software, in violation of Microsoft's software licenses and its intellectual property rights.

## V.    CAUSES OF ACTION

### First Claim
### Copyright Infringement — 17 U.S.C. §§ 501 *et seq.*

41.    Microsoft specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

42.    Microsoft is the sole owner of Microsoft Office 2010, Windows 10, Windows 8.1 and Windows 7, and of the corresponding copyrights and Certificates of Registration with the registration numbers listed above.

43.    Defendants have infringed Microsoft's copyrights by reproducing Microsoft software in the United States of America without approval or authorization from Microsoft.

44.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered copyrights.

45.    As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement. Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

46.    The award of statutory damages should be enhanced in accordance with 17 U.S.C. § 504(c)(2).

47.    Microsoft is further entitled to injunctive relief and an order impounding all infringing materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's copyrights are unique and valuable property which have no readily determinable market value; (b) Defendants' infringement harms Microsoft such that Microsoft could not be made whole by any

monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## Second Claim
### Trademark Infringement — 15 U.S.C. § 1114

48.    Microsoft specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

49.    Defendants' activities constitute infringement of Microsoft's federally registered trademarks and service marks with the registration numbers listed above.

50.    Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks and service marks described above and uses these trademarks and service marks to distinguish Microsoft's products from the software and related items of others in the same or related fields.

51.    Because of Microsoft's long, continuous, and exclusive use of these trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify, software programs and related components or services of Microsoft.

52.    The infringing materials that Defendants have and are continuing to install are likely to cause confusion, mistake, or deception as to their source, origin, or authenticity.

53.    Further, Defendants' activities are likely to lead the public to conclude, incorrectly, that the infringing materials that Defendants are installing originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

54.    At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

55.    As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and

treble damages and attorney fees pursuant to 15 U.S.C. § 1117 (a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

56.     Microsoft is further entitled to injunctive relief and an order compelling the impounding of all infringing materials.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's trademarks and service marks are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

### Third Claim
### False Designation of Origin, False Description and Representation of Microsoft Programs — 15 U.S.C. §§ 1125 *et seq.*

57.     Microsoft specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

58.     Microsoft advertises, markets, distributes, and licenses its software and related components under the trademarks and service marks described above, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.

59.     Because of Microsoft's long, continuous, and exclusive use of the trademarks and service marks, they have come to mean, and are understood by customers, end users, and the public to signify, software or services of Microsoft.

60.     Microsoft has also designed distinctive and aesthetically pleasing displays, logos, icons, graphic images, and packaging (collectively, "Microsoft visual designs") for

its software programs and related components as well as its licensing programs.

61.     On information and belief, Defendants' wrongful conduct includes the use of Microsoft's marks, name, and/or imitation visual designs (specifically displays, logos, icons, graphic designs, and/or packaging virtually indistinguishable from Microsoft visual designs) and representation of affiliation with Microsoft's RRP program in connection with Defendants' commercial advertising or promotion, including without limitation, in connection with the offering for sale and sale of unlicensed Microsoft software in interstate commerce.

62.     Defendants have used, and continue to use, the trademarks and service marks referenced above to compete unfairly with Microsoft and to deceive customers. Upon information and belief, Defendants' wrongful conduct misleads and confuses their customers and the public as to the origin and authenticity of the goods and services advertised, marketed, installed, offered or distributed in connection with Microsoft's marks, name, and imitation visual designs, and wrongfully trades upon Microsoft's goodwill and business reputation.  Defendants' conduct constitutes (a) false designation of origin, (b) false or misleading description, and (c) false or misleading representation that the imitation visual images originate from or are authorized by Microsoft, all in violation of 15 U.S.C. § 1125(a).

63.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

64.     As a result of Defendant's wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

65.     Further, Microsoft is entitled to injunctive relief, including an order compelling the impounding of all imitation marks and visual designs being used,

advertised, marketed, installed, offered or distributed by Defendants, and directing

Defendants to stop representing or implying they are offering licensed Microsoft

software.  Microsoft has no adequate remedy at law for Defendants' wrongful conduct

because, among other things: (a) Microsoft's marks, name and visual designs are unique

and valuable property which have no readily-determinable market value; (b) Defendants'

advertising, marketing, installation, or distribution of imitation visual designs constitutes

harm to Microsoft such that Microsoft could not be made whole by any monetary award;

and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is

continuing.

**Fifth Claim**
**Unfair Competition & False Advertising — 15 U.S.C. § 1125(a)**

66.     Microsoft specifically realleges and incorporates by reference each and

every allegation contained in the Complaint as though fully set forth in this Claim.

67.     Defendants have made false and misleading representations and

descriptions of fact in connection with the offering for sale and sale of unlicensed

Microsoft software, including without limitation, that Defendants are offering licensed

Microsoft software.

68.     Defendants' false and misleading representations and descriptions of fact

were made in commercial advertising or promotion, including without limitation, in

connection with the offering for sale and sale of unlicensed Microsoft software.

69.     Defendants' false and misleading representations and descriptions of fact

misrepresent the nature, characteristics, qualities, or origin of their goods, services, and

commercial activities.

70.     Defendants' use of Microsoft's copyrights and trademarks referenced

above and its false and misleading representations and descriptions of fact in interstate

commerce in connection with its offering for sale of unlicensed Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers, and such deception is material, in that it is likely to influence the consumers' purchasing decisions.

71.     Defendants have used, and continue to use, Microsoft's copyrights and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

72.     Defendants' conduct constitutes false advertising and federal unfair competition, in violation of 15 U.S.C. § 1125(a).

73.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

74.     As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

75.     Further, Microsoft is entitled to injunctive relief and to an order directing Defendants to stop representing or implying that they are offering licensed Microsoft software. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Microsoft respectfully prays for the following relief:

A.     That the Court enter judgment in Microsoft's favor on all claims;

B.     That the Court permanently restrain and enjoin Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with it, from:

(i)     copying or making any other infringing use or infringing distribution of Microsoft's software and other intellectual property including but not limited to the software identified by the trademark, service marks, and copyright registration numbers listed above;

(ii)     manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any Microsoft software or other intellectual property bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any of Microsoft's registered trademarks, service mark, or copyrights, including, but not limited to, the trademark, service mark, and copyright registration numbers listed above;

(iii)     using any simulation, reproduction, counterfeit, copy, or colorable imitation of Microsoft's registered trademarks, service marks, or copyright including, but not limited to the trademark, service mark, and copyright registration numbers listed above, in connection with the manufacture, assembly, production, distribution, offering for distribution, circulation, sale, offering for sale, import, advertisement, promotion, or display of any software, component, and/or other item not authorized or licensed by Microsoft;

(iv)     engaging in any other activity constituting an infringement of any of Microsoft's trademarks, service marks and/or copyrights, or of Microsoft's rights in, or right to use or to exploit, these trademarks, service marks, and/or copyrights; and

(vi)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed above.

C.     That the Court enter an order pursuant to 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit and infringing copies of purported Microsoft software and/or materials bearing any of Microsoft's trademarks or service marks, and any related item, including business records, that are in Defendants' possession or under their control;

D.     That the Court enter an order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their distribution of counterfeit and infringing copies of Microsoft's software;

E.     That the Court enter an order requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

F.     That Defendants be required to pay all general, special, actual, and statutory damages which Microsoft has sustained, or will sustain, as a consequence of Defendants' unlawful acts, and that such damages be enhanced, doubled, or trebled as provided for by 17 U.S.C. § 504(c) and 15 U.S.C. § 1117(b);

G.     That Defendants be required to pay to Microsoft both the costs of this action and the reasonable attorneys' fees incurred by Microsoft in prosecuting this action, as provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, and otherwise as provided for by law; and

H.     That the Court grant Microsoft such other, further, and additional relief as the Court deems just and equitable.

DATED this 12th day of March, 2018.

DAVIS WRIGHT TREMAINE LLP
*TRIAL COUNSEL for Plaintiff Microsoft Corp.*

By *s/ Bonnie E. MacNaughton*
    Bonnie E. MacNaughton (*pro hac vice forthcoming*)
    James H. Wendell (*pro hac vice forthcoming*)
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Tel: (206) 622-3150
    Fax: (206) 757-7700
    bonniemacnaughton@dwt.com
    jamiewendell@dwt.com

HOLLAND & KNIGHT LLP
*Attorneys for Plaintiff Microsoft Corp.*

By _____
    Suzanne E. Gilbert
    Florida Bar No. 94048
    suzanne.gilbert@hklaw.com
    Lauren Millcarek
    Florida Bar No. 100317
    lauren.millcarek@hklaw.com
    HOLLAND & KNIGHT LLP
    200 South Orange Ave., Suite 2600
    Orlando, FL 32801
    (407) 425-8500